IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Danna G. Taylor, | ) | Case No.: 05-13171-BGC-13 |
| | ) | |
| Debtor. | ) | |

**ORDER**

The matters before the Court are a Motion to Dismiss and an Objection to Confirmation filed on November 28, 2005, by Ms. Mary Taylor, the debtor's former spouse; an Objection to Confirmation and Motion to Dismiss filed on December 7, 2005, by the Chapter 13 Trustee; the debtor's Objection to Claim No. 1 filed by Ms. Taylor; and Confirmation of the debtor's plan.

**I. Background**

All of the matters before the Court relate to, or are substantially affected by a dispute between the debtor and his former spouse regarding the debtor's domestic maintenance and support obligations. In reviewing these matters, this Court is instructed by the Court of Appeals for the Eleventh Circuit to tread lightly into this area.

Writing for the Court of Appeals for the Eleventh Circuit in Carver v. Carver, 954 F.2d 1573 (11 th Cir.1992), Circuit Judge Hon. Peter T. Fay explained the relationship between state courts and bankruptcy courts in matters of domestic relations. Judge Fay wrote:

> When requested, such relief should be liberally granted in situations involving alimony, maintenance, or support in order to avoid entangling the federal court in family law matters best left to state court. See In re White, 851 F.2d 170, 173 (6th Cir.1988); In re MacDonald, 755 F.2d 715 (9th Cir.1985). Moreover, "it would result in great injustice to require children to await a bankruptcy court's confirmation of a debtor's Chapter 13 plan before permitting them to enforce their state court-determined right to collect past due support payments." Caswell v. Lang, 757 F.2d 608, 610 (4th Cir.1985) (holding that child support arrearages may not be included in a Chapter 13 plan). Such considerations clearly constitute "cause" for which relief from stay may be granted under § 362(d)(1).

Id. at 1577.

He added:

> However, alimony, maintenance, or support are not standard debtor/creditor situations, but involve important issues of family law. Traditionally, the federal courts have been wary of becoming embroiled in family law matters. For that reason, federal courts generally abstain from deciding diversity "cases involving divorce and alimony, child custody, visitations rights, establishment of paternity, child support, and enforcement of separation or divorce decrees still subject to state court modification." Ingram v. Hayes, 866 F.2d 368, 369 (11th Cir.1988); see also Crouch v. Crouch, 566 F.2d 486, 487 (5th Cir.1978). See generally Simms v. Simms, 175 U.S. 162, 20 S.Ct. 58, 44 L.Ed. 115 (1899) (the subject of domestic relations belongs to state, not federal law). "The reasons for federal abstention in these cases are apparent: the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts." Crouch, 566 F.2d at 487.

Id. at 1578 (footnote omitted).

And finally he concluded:

> The state interest in ensuring that dependents are adequately provided for is certainly strong. Decisions which involve alimony or child support, generally under continuing supervision by the state courts, could require the bankruptcy court to second guess the state court on such matters and could produce conflicting court decrees further aggravating an already delicate situation. Nor was it "the 'intent of the new Bankruptcy Code to convert the bankruptcy courts into family or domestic relations courts-courts that would in turn, willy-nilly, modify divorce decrees of state courts insofar as these courts had previously fixed the amount of alimony and child support obligations of debtors.' " Caswell, 757 F.2d at 610-11 (quoting In re Garrison, 5 B.R. 256, 260 (Bankr .E.D. Mich.1980)). "**It is appropriate for bankruptcy courts to avoid incursions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters**.' " In re MacDonald, 755 F.2d at 717-19 (quoting In re Graham, 14 B.R. 246, 248 (Bankr. W.D .Ky.1981)).

2

Id. at 1578-79 (emphasis added).[1]

## II.  Findings of Fact

The facts necessary to decide the issues are not disputed.

The debtor filed a previous case, Case No. 03-04813-BGC-13, on June 2, 2003. That case was confirmed on August 21, 2003. The confirmation order in that case read in part:

> If the debtor has an ongoing **child support, alimony**, or utility obligation and fails to make any post-petition payment for a debt on that obligation, **relief from the automatic stay is granted** to collect that , or any future debt, or to enforce any order or contract associated with the obligation.

Confirmation Order, entered August 21, 2003, Case No. 03-04813 (emphasis added).

On March 28, 2005, the debtor filed an Amended Chapter 13 Voluntary Petition that included an Amended Schedule E - Creditors Holding Unsecured Priority Claims, adding a claim under the heading "Alimony, Maintenance, or Support."  On March 29, 2005, the Bankruptcy Clerk's Office sent a Notice of Amendment to Schedules to Mary Taylor (and another creditor on an unrelated claim) to notify Ms. Taylor of the debtor's intent to include her in his bankruptcy case.

On May 5, 2005, Ms. Taylor filed a Motion for Relief from Automatic Stay requesting the Court to allow her to continue prosecution of a Petition for Modification and Rule Nisi filed by Ms. Taylor against Mr. Taylor in the Circuit Court of Shelby County, Alabama.  After notice, a hearing was held on May 24, 2005.  Appearing were the debtor; his attorney Janice Groce; and Ted Stuckenschneider for Ms. Taylor.  This Court entered an order on June 1, 2005.  That order read:

1. The Motion for Relief from Automatic Stay is **GRANTED** to the extent that the Movant may proceed in the Circuit Court of Shelby County, Alabama, with her Petition for Modification and Rule Nisi and the Circuit Court may consider any issue related to that Petition or the decree it intends to modify;

2. Relief from stay is not granted with respect to the collection of prepetition debts;

3. Collection of a prepetition debt must proceed in this Court, unless relief from the stay is granted in the future;

---

[1] See also Cummings v. Cummings, 244 F.3d 1263, 1267 (11th Cir. 2001).

3

4. The restriction in Paragraph 2 does not restrict the Circuit Court from considering <u>any</u> issue with regard to the amount of or nature of any prepetition debt, only collection;

5. As to post petition debts for support, this Court's Confirmation Order of August 21, 2003, grants relief from stay;

6. The parties' divorce decree requirement that the debtor maintain a life insurance policy is an ongoing obligation, both prepetition and post petition. As to the post petition responsibility, the debtor must maintain the policy unless the Circuit Court relieves him of that obligation. But so long as the obligation remains, unless the debtor provides the movant proof of the policy (in compliance with the parties' decree), within ten days of the date of this order, and maintains that policy in accordance with the Circuit Court's orders, relief from the stay is granted without further order of this Court;

7. Unless granted by a future order, relief from stay to prosecute civil contempt is not allowed; however, the Circuit Court may utilize its criminal contempt powers as it deems necessary in regard to any matter before it. See this Court's opinion in <u>In re Allison</u>, 182 B.R. 881 (Bkrtcy. N.D. Ala. 1995).

<u>Order</u>, June 1, 2005, Proceeding No. 66.

In response, the state court held a hearing on June 14, 2005, regarding the <u>Petition for Modification and Rule Nisi</u>. The state court entered a <u>Final Order</u> on June 22, 2005, which reads in pertinent part:

> THIS CAUSE coming on to be heard on the 14th day of June, 2005 was submitted for a final order on the pleadings on file in this cause. Upon consideration thereof, together with ore tenus testimony, this Court enters the following findings of fact and the following final order.
>
> This Court finds:
>
> The parties to this cause were divorced by way of Final Judgment of Divorce dated March 5, 2001. Custody of the parties' two minor children was shared with each parent being given custody of the two children on basically an equal basis. No child support was awarded "... due to equal time each party ..." had with the children. Each party claimed one child for income tax purposes. By September, 004, Plaintiff was to complete college funding for the children. Both parties were also to pay one-half of non-covered medical expenses.
>
> Plaintiff voluntarily relinquished the physical custody of the children to the Defendant in April, 2004. Plaintiff also agreed at that time to pay Defendant $736.00 per month for child support. Neither the custody arrangement, nor the child support obligation was enrolled into a court order.

Defendant's current Petition for Modification And Petition For Rule Nisi was filed July 21, 2004.

Plaintiff filed a Chapter 13 bankruptcy petition in August, 2003. The Honorable Benjamin Cohen, United States Bankruptcy Judge, entered a Confirmation Order dated August 20, 2003 which provided that if Plaintiff failed to pay any ongoing child support obligation or failed to make any post petition payment for a debt on that obligation, relief was given from the automatic stay to collect that or any future debt or to enforce any order or contract associated with the obligation.

On June 1, 2005, the Honorable Judge Benjamin Cohen entered an Order which state that as to any post petition debts for support, the Bankruptcy Court's said confirmation order granted a relief from the stay.

A Temporary Order was issued by this Court on December 8, 2004 pursuant to the agreement of the parties, providing that Plaintiff was to pay Defendant $600.00 per month child support beginning December 1, 2004.

Plaintiff owes $3,459.15 pursuant to the December, 2004 order. Plaintiff has not paid the total child support due for each of the months of January, 2005, February, 2005, March, 2005, April, 2005, May, 2005 and June, 2005. Plaintiff also has not paid the $31,337.50 obligation due September 1, 2004. Plaintiff also owes Defendant $1,813.00 in non-covered medical expenses which were incurred for the parties' children post bankruptcy petition. In addition, Plaintiff owes $3,680.00 in non-ordered child support.

Plaintiff has a double major in Accounting and Finance and is capable of earning $40,000.00 per year, or $3,333.00 per month.

<u>Final Order</u>

Plaintiff has willfully failed to pay child support payments for January, 2005, February, 2005, March, 2005, April, 2005, May, 2005, and June, 2005 and is criminal contempt of Court for each of the above occasions and the Court assesses five (5) days jail time for each of the above occasions, or a total of thirty (30) days.

Plaintiff also willfully failed to pay his September 1, 2004 college funding and the Court assesses Plaintiff five (5) days jail time for his willful failure to do so.

Plaintiff is in both criminal and civil contempt of Court for failure to pay post petition bankruptcy child support obligations aggregating $36,609.65.

The Sheriff of Shelby County, Alabama and any other law enforcement officer in this State is directed to arrest and incarcerate Plaintiff, Danna G. Taylor, for a period of thirty-five (35) days in the Shelby County, Alabama jail for

> Plaintiff's criminal contempt and also for such further time until Plaintiff shall purge himself of civil contempt by paying into the Clerk of this Court the sum of $36,609.65.
>
> Plaintiff shall also pay to Defendant the sum of $21,331.85 for and as the reasonable charges of the services of Defendant's attorney, Sammye Kok.
>
> Judgment is hereby entered in favor of Defendant and against the Plaintiff for the sum of $61,621.50 representing all past due post bankruptcy petition obligations for child support, non-covered medical expenses and college funding plus said attorney's fees.

<u>Final Order</u>, June 22, 2005, Circuit Court of Shelby County (footnotes omitted).

On October 16, 2005, the debtor filed the current case, Case No. 05-13171-BGC-13. Because Case No. 03-04813 was pending at the time, the instant case, Case No. 05-13171, was set for Show Cause why it should not be dismissed because two cases were pending. A hearing on the Show Cause was set for November 15, 2005, at 2:00 p.m.

Before the hearing on November 15, the debtor filed a <u>Motion to Dismiss</u> Case No. 03-04813. The Court entered an order on November 17, 2005, dismissing Case No. 03-04813.

On November 30, 2005, the Court entered an Order on the Show Cause hearing held on November 15, 2005, at 2:00 p.m. in Case No. 05-13171. That order reads in part:

> Based on the dismissal of the debtor's prior case, there was no action taken on the Show Cause hearing.
>
> The mediation scheduled on the state court matter and the appeal pending before the Alabama Court of Civil Appeals may go forward.
>
> If a formal order is necessary, relief from the stay is granted to allow those matters to continue.

<u>Order</u>, November 30, 2005, Proceeding No. 27.

In the meantime, on November 15, 2005, the debtor filed a <u>Chapter 13 Plan Summary</u> in Case No. 05-13171. That plan stated that the debtor would make monthly payments of $151.73 to the Trustee.

On November 28, 2005, Ms. Taylor filed a <u>Motion to Dismiss</u> and an <u>Objection to Confirmation</u>. After notice, a hearing was held on December 20, 2005, on Ms. Taylor's <u>Motion to Dismiss</u>. The matter was submitted on the arguments of counsel and the

6

Case 05-13171-BGC13    Doc 47    Filed 03/02/06    Entered 03/02/06 10:43:20    Desc Main
Document    Page 6 of 14

pleadings. A hearing was scheduled for January 9, 2006, on Ms. Taylor's Objection to Confirmation to be heard with the debtor's Confirmation Hearing.

Also on November 28, 2005, Ms. Taylor filed Claim No. 1 as a priority claim for $66,891.38, representing her calculation of the debtor's past due support obligation.

On December 7, 2005, the Trustee filed an Objection to Confirmation and Motion to Dismiss. The Trustee contended that the debtor's plan is not feasible. The trustee reported, given the claims listed and filed in this case, for the debtor to complete his plan within the time proposed, the debtor would be required to make monthly plan payments of $1,218.00. The trustee, and the debtor, reported that the debtor's disposable monthly income is $151.73. The Trustee's objection and motion were scheduled for hearing on January 9, 2006, to be heard with the debtor's Confirmation Hearing.

On December 20, 2005, the debtor filed an Objection to Claim No. 1 of Ms. Taylor. After notice, a hearing was scheduled for January 9, 2006.

A hearing was held on January 9, 2006, on all pending matters. Appearing were Ms. Groce; Mr. Stuckenschneider; and Mr. Sims Crawford, the Chapter 13 Trustee. The matters were submitted on the arguments of counsel and the pleadings.

### III. Issues

The dispositive issue is whether the debtor's proposed Chapter 13 plan is feasible. The answer to that issue depends on whether Claim No. 1 filed by Ms. Taylor for $66,891.38 is allowed. Whether Claim No. 1 is allowed depends on resolution of the contentions and arguments listed below.

The practical result is if this Court accepts the state court's determination that Ms. Taylor has a claim for at least $61,621.50 against the debtor, the debtor's proposed Chapter 13 plan would not be feasible.

### IV. Contentions

Ms. Taylor contends that the doctrine of collateral estoppel prevents this Court from considering the validity of Claim No.1, (as it is based on the state court's determination,) or considering whether the amount of that claim is correct. Ms. Taylor urges this Court to accept the state court's order, allow Claim No. 1 as filed, and to dismiss the pending Chapter 13 case because, with the amount of Claim No.1, the debtor proposed Chapter plan is not feasible.

The debtor contends that this Court should not accept the state court's order now, or consider the pending bankruptcy law issues. In support of those contentions the debtor makes two separate arguments.

7

First, the debtor argues that the state court violated this Court's June 1, 2005, order by considering debts, (which the debtor characterizes as pre-petition), when that court determined the debtor owed Ms. Taylor $61,621.50. In response, Ms. Taylor contends that this Court's order allowed the state court to make the determinations it did and that the state court followed this Court's order.

This Court's June 1, 2005, order granted, among other things, relief from the stay for the state court to determine the amount of post-petition child support debt. In its order, the state court characterized the amount of Ms. Taylor's claim as, "representing all past due post bankruptcy petition obligations for child support." Emphasis added.

Second, the debtor argues that because the state court order establishing an amount of Ms. Taylor's claim against the debtor is on appeal, this Court should not decide the amount of the claim until the state appellate court has ruled. That argument raises the immediate issue of whether the state court's order is final and therefore subject to collateral estoppel. As stated above, Ms. Taylor contends that the doctrine of collateral estoppel applies.

## V. Conclusions of Law

### A. This Court's June 1, 2005 Order and the State Court's June 22, 2005, Order

This Court's June 1, 2005, order and the state court's June 22, 2005, order are in agreement.

The pertinent parts of this Court's order granted the parties, and indirectly the state court, relief from the automatic stay, to litigate, as the Eleventh Circuit Court envisioned in Carver v. Carver, matters, "involving alimony, maintenance, or support in order to avoid entangling the federal court in family law matters best left to state court. " Id. 954 F.2d at 1577. And as Judge Fay explained, such relief from the stay should be, "liberally granted...." Id.

In its June 1, 2005, order this Court granted relief from the stay for the state court to consider any prepetition and post petition domestic obligation the debtor had in regard to a Petition for Modification and Rule Nisi pending in the state court. And while that relief may have restricted any collection of a prepetition debt, this Court specifically allowed the state court to consider any issue with regard to the amount of, or nature of any prepetition domestic debt. Also in its June 1 order, this Court recognized that the parties' divorce decree requirement that the debtor maintain a life insurance policy was an ongoing obligation, both prepetition and post petition. In addition, this Court restricted its grant of relief from the stay in regard to prosecution of civil contempt. Bankruptcy law does not restrict the state court's criminal contempt powers. See this Court's opinion in In re Allison, 182 B.R. 881 (Bankr. N.D. Ala. 1995).

8

And finally, in Case no. 03-04813, through its Confirmation Order of August 21, 2003, this Court granted the parties and the state court, relief from the stay to consider and act upon any post-petition domestic debts.

The state court's actions were in complete agreement with this Court June 1, 2005, order and this Court's August 21, 2003, confirmation order. In regard to the issues before this Court now, the state court held:

> Judgment is hereby entered in favor of Defendant and against the Plaintiff for the sum of $61,621.50 representing all past due **post bankruptcy petition obligations** for child support, non-covered medical expenses and college funding plus said attorney's fees.

<u>Final Order</u> at 4, entered June 22, 2005, Circuit Court of Shelby County (emphasis added).

As stated above, this Court's June 1, 2005, order and its August 21, 2003, order granted relief from the stay for the state court to consider both the debtor's prepetition and post petition domestic obligations and relief for the state court to determine, <u>and enforce</u> collection of the debtor's <u>post petition obligations</u>. The state court's order did exactly that. Consequently, this Court must find, contrary to the debtor's contention, the state court did not violate this Court's June 1, 2005, order.[2]

## B. Appeal and Collateral Estoppel

The debtor's second argument has two parts. One, the debtor argues that because of the pending state court appeal, this Court should not consider the pending bankruptcy law issues until the state process is completed; and two, the debtor argues the doctrine of collateral estoppel does not apply.

### 1. Finality of Judgment and the State Court Appellate Process

Ms. Taylor contends that the doctrine of collateral estoppel applies and that this Court may not now reconsider the issues decided by the state court. The debtor disagrees and argues this Court should not consider the state court's order until the

---

[2] It was not necessary for this Court to consider the substantive arguments the debtor makes in opposition to the state court's order. In regard to those arguments, this Court notes only that those arguments are the same arguments the debtor is making to the state appellate court. One major argument is that the state court included prepetition debts in its calculation in violation of this Court's order. Whether that is correct is of course something for the state appellate court to decide. Because collateral estoppel applies, this Court may not go behind the state court's order, which order specifically stated that it included only post petition debts.

9

state appellate process is complete. That argument raises the legal question: Is a lower court judgment final for purposes of collateral estoppel if that judgment is on appeal?

A minority of states recognize that a lower court judgment is not "final" for purposes of res judicata or collateral estoppel when that judgment is on appeal. See discussions of this issue in Campbell v. Lake Hallowell Homeowners Ass'n, 157 Md. App. 504, 852 A.2d 1029 (Md. App.2004); Conopco, Inc. v. Roll Intern., 231 F.3d 82 (2nd Cir. 2000); and In re Turner, 204 B.R. 988 (9th Cir. BAP 1997). The majority view is that lower court judgments are final on appeal for purposes of res judicata or collateral estoppel. Id. See also In re Fox, 232 B.R. 229 (Bkrtcy. D.Kan. 1999). Alabama follows the majority view.

Alabama follows the majority rule. In Alabama, "a judgment will operate as res judicata or as estoppel notwithstanding an appeal when the appellate court action is based on a review of the record made below." Alabama Power Co. v. Thompson, 250 Ala. 7, 32 So. 2d 795, 9 A.L.R.2d 974 (1947) (citations omitted). Restated in Cashion v. Torbert, 881 So.2d 408 (Ala. 2003).[3]

The state court's order here was a final order. Therefore, this Court may now consider whether the doctrine of collateral estoppel applies in this matter. If it does, this Court must accept the state court's determination that Ms. Taylor has a claim for at least $61,621.50, the amount established by the state court.

## 2. Application of the Doctrine of Collateral Estoppel

Writing for the Court of Appeals for the Eleventh Circuit in In re St. Laurent, 991 F.2d 672 (11th Cir. 1993), Circuit Judge Joel F. Dubina explains the doctrine of collateral estoppel and the choice of law to determine whether the doctrine applies. He wrote:

> Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a "full and fair opportunity" to litigate that issue in an earlier case. Allen v. McCurry, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).
> 
> *****

---

[3] As this statement demonstrates, the rule in Alabama is slightly different from the general majority rule. A distinction is made in Alabama where an "appellate court" conducts a trial de novo rather than reviewing the final decision and record of the lower court. Where there is a new trial, the lower court order is not considered final and not subject to collateral estoppel. That distinction does not apply here. In this case the state appellate court review is based on the record below.

10

Case 05-13171-BGC13   Doc 47   Filed 03/02/06   Entered 03/02/06 10:43:20   Desc Main
Document   Page 10 of 14

> <u>If the prior judgment was rendered by a state court</u>, then **the collateral estoppel law of that state** must be applied to determine the judgment's preclusive effect.

Id. at 675-76 (emphasis added).

Because the decision here was rendered by an Alabama state court, this Court must apply the collateral estoppel law of Alabama. Writing for the Supreme Court of Alabama in <u>Ex parte Flexible Products Co.</u>, 915 So.2d 34 (Ala. 2005), Justice Hon. Robert Bernard Harwood Jr. explained that specific test in Alabama. He wrote:

> " 'Collateral estoppel requires (1) an issue identical to one litigated in the prior suit; (2) that the issue [have] been actually litigated in the prior suit; and (3) that the resolution of that issue have been necessary to the prior judgment. In addition, the parties must have been the same in both suits. Where these elements are present, the parties are barred from relitigating issues actually litigated in a prior suit.' " <u>Lott v. Toomey</u>, 477 So.2d 316, 319 (Ala.1985).

<u>Id</u>. at 47. See this Court's opinion in <u>In re Wald</u>, 208 B.R. 516 (Bankr. N.D. Ala. 1997).

This Court has applied that test in this case and finds that all four requirements are satisfied and collateral estoppel applies.

1. The issue before this Court and the issue before the state court were identical. The issue is: What is the amount of Ms. Taylor's claim?

2. The issue of Ms. Taylor's claim was actually litigated in the state court when the state court determined that Ms. Taylor had a claim against the debtor for $61,621.50.

3. Resolution of the issue of Ms. Taylor's claim was necessary to the prior judgment as the state court was required to find the amount of Ms. Taylor's claim if it were to resolve the state court issues between the parties.

4. The parties in the state court are the same as the parties in this Court.

Therefore, the Court finds that all four requirements are met. Consequently, the Court finds that the doctrine of collateral estoppel applies in the matters before this Court. What then is the effect?

11

### 3. The Effect of Collateral Estoppel

As the court in St. Laurent explained, "Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided ..." Id. Consequently, this Court is prohibited from relitigating the amount of Ms. Taylor's claim and must, based on the doctrine, accept the amount found by the state court. That amount is $61,621.50.[4]

### C. Feasibility and Confirmation of the Debtor's Chapter 13 Plan

In his Trustee's Objection to Confirmation and Motion to Dismiss the Chapter 13 trustee contends that the debtor's proposed plan is not feasible. The trustee represents, and this Court can confirm, that the debtor's disposable income is, according to the debtor's proposed plan, $151.73 per month.[5] Based on the claims listed and filed in this case, in order for the debtor to pay those claims, the Chapter 13 trustee recommends plan payments from the debtor of $1,218. And while that recommendation is based on the amount of the claim Ms. Taylor filed in this case, that is $66,891.38, not $61,621.50, the amount established by the state court, in relationship to the disparity between the debtor's monthly disposable income and the amount he would need to pay monthly to complete his case ($153.73 versus $1,218.00), that difference in the claims is not significant.

Section 1325(a)(6) of the Bankruptcy Code reads, "the court shall confirm a plan if – (6) the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C.A. § 1325. There are many court interpretations of the meaning of that subsection. Some of the best examples include these:

In re Cushman, 263 B.R. 293 (Bankr. W.D. Mo. 2001):

First, the Plan cannot be confirmed because it does not comply with 11 U.S.C. § 1325(a)(6). Section 1325(a)(6) requires that a debtor "will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). To satisfy § 1325(a)(6) "a debtor's plan must have a reasonable likelihood of success, i.e., that it is likely that the debtor will have the necessary resources to make all payments as directed by the plan, [and] ... [t]he debtor carries the initial burden of showing that the plan is feasible." In re Keach, 225 B.R. 264, 269-70 (Bankr. D.R.I.1998) (quoting First Nat. Bank v. Fantasia (In re Fantasia ), 211 B.R. 420, 423 (1st Cir. BAP 1997)).

---

[4] The Court need not consider that there is a difference between the state court amount and the amount of the claim by Ms. Taylor in reaching its decision here. As discussed below, the proposed plan is not feasible under either amount.

[5] The debtor's Schedule J filed with his bankruptcy petition places that amount at $161.73.

Id. at 294.

> In re Bernardes, 267 B.R. 690 (Bankr. D.N.J. 2001):
>
> Feasibility is a question of fact. See In re Lippolis, 228 B.R. 106, 114 (E.D. Pa.1998). While the feasibility requirement is not rigorous, see In re Blackerby, 208 B.R. 136, 144 (Bankr. E.D. Pa.1997), the plan proponent must, at minimum, demonstrate that the Debtor's income exceeds expenses by an amount sufficient to make the payments proposed by the plan. See In re Cushman, 263 B.R. 293, 294 (Bankr. W.D. Mo.2001); In re Keach, 225 B.R. 264, 269 (Bankr. D.R.I.1998). This court finds that Old Republic has failed to meet this burden.

Id. at 695

And the court in In re Brown, 319 B.R. 898 (Bankr. M.D. Ga. 2004) offers this admonition, "The Court is not omniscient, but § 1325(a)(6) requires the Court to **be realistic about how this case is likely to unfold**." Id. at 902 (emphasis added).

This Court is realistic about what will unfold in this case, and this Court must find that the debtor's proposed Chapter 13 plan is not only not feasible, based on the debtor's current income and with Ms. Taylor's "state court" claim, the debtor's plan would never be feasible. Put directly, under these circumstances, the debtor cannot propose a feasible Chapter 13 plan. What then is the consequence of a plan that is not feasible?

Clearly the debtor's proposed plan cannot be confirmed and the Trustee's Objection to Confirmation is due to be sustained. Similarly, the Objection to Confirmation filed on November 28, 2005, by Ms. Taylor is due to be sustained. In addition, because this Court accepts the state court's finding in regard to Ms. Taylor's claim, the debtor's Objection to Claim is due to be denied (at least as to the amount listed in the state court order.) What that leaves is Ms. Taylor's Motion to Dismiss and the trustee's Motion to Dismiss. The questions then are: Should a case be dismissed where the debtor cannot propose a feasible plan, and is there authority to dismiss a case for that reason? The answer to both questions is, yes. See the unpublished opinion in In re Bratton, 248 F.3d 1156, 2000 WL 1763341 (7th Cir. 2000).

### D. Dismissal under Section 1307(c)

Section 1307(c) of the Bankruptcy Code allows a bankruptcy court to dismiss a case for various reasons. Those include: "unreasonable delay by the debtor that is prejudicial to creditors"; "failure to file a plan timely under section 1321 of this title"; and "denial of confirmation of a plan under section 1325...." 11 U.S.C.A. § 1307. Also included in that list through recent bankruptcy code amendments, although not applicable to this case because it was filed before those amendments took effect, is the

13

"failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." 11 U.S.C.A. § 1307.

Except for the recent amendment to section 1307(c), all of the other listed justifications for dismissing a Chapter 13 case apply here. To delay this case until the state appellate court rules would be prejudicial to creditors. While the debtor filed a timely plan in this case, it is not a feasible plan. And confirmation certainly must be denied because the proposed plan is not feasible.

Therefore based on the above, the Court finds that this case is due to be dismissed.

## VI. Conclusions

The Court concludes that the doctrine of collateral estoppel applies to this Court's consideration of the state court's order finding that Ms. Taylor has a domestic relations claim against the debtor for $61,621.50. In doing so, this Court finds that the state court not only did not violate this Court's June 1, 2005, order, the state court's order is also in agreement with this Court's order. Consequently, the Court finds that Ms. Taylor has a claim against the debtor for at least $61,621.50. That claim makes the debtor's proposed plan not feasible. Because the plan is not feasible and cannot be made feasible based on the debtor's disposable income, this case is due to be dismissed.

Based on the foregoing, it is **ORDERED, ADJUDGED and DECREED** that:

1. The Objection to Confirmation portion of the Trustee's Objection to Confirmation and Motion to Dismiss is **SUSTAINED**;

2. The Objection to Confirmation filed by Ms. Taylor is **SUSTAINED**;

3. The debtor's Objection to Claim No. 1 of Ms. Taylor is **OVERRULED**;

4. The Motion to Dismiss portion of the Trustee's Objection to Confirmation and Motion to Dismiss is **GRANTED**;

5. The Motion to Dismiss filed by Ms. Taylor is **GRANTED**;

6. This case is **DISMISSED**.

This order is a written opinion for purposes of the E-Government Act, Pub. L. No. 107-347.

Dated: March 2, 2006        /s/Benjamin Cohen
                            BENJAMIN COHEN
BC:pb                       United States Bankruptcy Judge